```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MISSOURI
                            EASTERN DIVISION


ZOLTEK CORPORATION,             )
                                )
          Plaintiff,            )
                                )
     vs.                        )     Case No. 4:08-CV-460 (CEJ)
                                )
STRUCTURAL POLYMER GROUP, LTD., )
and GURIT (UK), LTD.,           )
                                )
          Defendants.           )
```

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint. Plaintiff has filed a response in opposition to the motion and the issues are fully briefed.

On March 6, 2008, plaintiff Zoltek Corporation (Zoltek) filed this action in state court, alleging that plaintiffs Structural Polymer Group, Ltd., and its subsidiary Gurit (UK), Ltd. (collectively, Structural Polymer) breached the parties' ten-year supply agreement and committed fraud. Structural Polymer timely removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under 28 U.S.C. § 1332. Structural Polymer now moves to dismiss, arguing that Zoltek's claims fail as a matter of law pursuant to Fed.R.Civ.P. 12(b)(6).[1]

---

[1]Structural Polymer additionally argues that, pursuant to a forum selection provision in the purchase orders it allegedly cancelled, Zoltek's contract claim must be brought in the courts of England, and that Zoltek has failed to plead its fraud claim with particularity. Because the Court finds that Zoltek's claims must be dismissed pursuant to Rule 12(b)(6), these additional arguments will not be addressed.

## I. Background

Plaintiff Zoltek manufactures carbon fiber. The Structural Polymer defendants use carbon fiber in manufacturing products for sale to third parties. In November 2000, the parties entered into a ten-year Supply Agreement, pursuant to which Zoltek agreed to supply all of Structural Polymer's requirements for large filament count carbon fibers. In turn, Structural Polymer agreed to obtain their total requirements for carbon fibers from Zoltek. The maximum amount that Structural Polymer could obtain in any given year was one million pounds more than the amount purchased the preceding year.

In its breach of contract claim, Zoltek alleges that, in December 2006, Structural Polymer issued purchase orders for 1,584[2] tons of carbon fiber for delivery in 2007. Zoltek agreed to provide 1,529 tons, which it calculated was one million pounds more than what was provided in 2006. Through the first week of November 2007, Zoltek manufactured and shipped 1,052 tons of fiber to Structural Polymer. On November 7, 2007, Structural Polymer cancelled all unfilled orders. On November 27, 2007, Structural Polymer provided Zoltek with written notification "purporting to cancel" the Supply Agreement in its entirety. Despite its belief that there was no cause for cancelling the contract or the purchase orders, Zoltek accepted the cancellation "going forward." Zoltek

---

[2] These figures are for metric tons; a metric ton equals 2204.6 pounds.

asserts, however, that Structural Polymer was obligated to accept shipment of the remainder of the 2007 order. Zoltek seeks damages for lost profits in the amount of $1.3 million.

In support of its fraud claim, Zoltek alleges that, in 2006, Structural Polymer's chief corporate development officer "falsely represented to Zoltek that it would purchase the maximum allowable quantity of carbon fiber for the years left in the Supply Agreement." Zoltek alleges that, in reliance on Structural Polymer's representation, Zoltek expended at least $77 million to expand its production facilities. Zoltek further alleges that Structural Polymer's representations were false when made and were made with the intent to deceive Zoltek. Zoltek seeks actual damages in an amount to be determined at trial plus punitive damages.

**II. Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (May 21, 2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-

pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Attached to plaintiff's complaint is a copy of the Supply Agreement. Defendants have additionally provided a copy of a purchase order and associated conditions of purchase. "If, on a matter under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(d). Documents that are necessarily embraced by the pleadings are not "matters outside the pleadings" for the purposes of Rule 12(d). Enervations, Inc. v. Minnesota Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004). The Supply Agreement is a document necessarily embraced by the pleadings and can be considered without converting the dismissal motion to one for summary judgment, and the Court has not considered the purchase orders in making its decision.

## III. Discussion

The Court applies the substantive laws of the State of Missouri to this action arising under its diversity jurisdiction. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

### A. Breach of Contract

The elements that must be proven in order for a party to recover for breach of contract are: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) the resulting damage to the other party. Midwest Bankcentre v. Old Republic Title Co. of St. Louis, 247 S.W.3d 116, 128 (Mo. Ct. App. 2008). Structural Polymer argues that Zoltek cannot establish that it failed to perform an obligation imposed by the Supply Agreement.

Zoltek claims that Structural Polymer violated the Supply Agreement by refusing to accept and pay for the balance of the 2007 orders. As Zoltek acknowledges, Structural Polymer issued purchase orders for 2007. Rather than bring suit for breach of purchase

orders,[3] however, Zoltek asserts that its claim arises from the Supply Agreement itself.

Zoltek does not claim that Structural Polymer improperly terminated the Supply Agreement. Zoltek claims instead that the termination of the agreement had no bearing on Structural Polymer's obligation to accept the 2007 orders. The termination provision states, in relevant part:

> The termination of this Agreement for any reason shall be without prejudice to (a) [Zoltek's] right to receive all payments accrued and unpaid at the effective date of termination, (b) the remedy of either party hereto in respect of any previous breach of any covenant contained herein or (c) any rights of [Structural Polymer] or [Zoltek] under this Agreement or otherwise. The termination of this Agreement shall not release [Zoltek] from its obligations to deliver Carbon Fibers ordered by [Structural Polymer] <u>unless such orders are cancelled by [Structural Polymer]</u>. Except for the warranties and representations contained in this Agreement, the parties shall have no further obligations to the other party hereto.

(emphasis added).

Structural Polymer argues that the underlined phrase explicitly authorized it to cancel purchase orders pursuant to termination of the Supply Agreement. Zoltek counters that the phrase merely "relieves Zoltek of the obligation of delivering

---

[3]The purchase orders were issued subject to Structural Polymer's "Conditions of Purchase," which provide that:

> English law governs these Conditions and each Contract and the Company [Structural Polymer] and the Supplier [Zoltek] agree to the . . . exclusive jurisdiction of the English courts in relation to legal proceedings brought by the Supplier against the Company.

carbon fiber if Structural Polymer cancels outstanding orders," but is silent with respect to legal consequences to Structural Polymer if it chooses to cancel the orders.

The flaw in Zoltek's argument is that nothing else in the agreement imposes an obligation upon Structural Polymer to accept unfilled orders once the parties terminated the agreement. For instance, Zoltek cannot argue that the quantity provision of the agreement was violated, because it did not set a minimum amount of carbon fiber that Structural Polymer was required to order in 2007. It may be that Zoltek has a viable claim for breach of the purchase orders, but that is not the claim that Zoltek brings. Zoltek has failed to state a claim for breach of the Supply Agreement and Count I will be dismissed.

### B. Fraud

Structural Polymer mounts three defenses to Zoltek's fraud claim: the economic loss doctrine, the statute of frauds, and Zoltek's failure to plead fraud with particularity as required by Rule 9(b). The Court finds that the claim is barred by the economic loss doctrine and thus declines to address Structural Polymer's additional arguments.

The economic loss doctrine prohibits recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty. Rockport Pharmacy, Inc. v. Digital Simplistics, Inc., 53 F.3d 195, 198 (8th Cir. 1995) (discussing Missouri law); Cunningham v. PFL Life Ins. Co., 42 F. Supp. 2d 872, 886-87 (N.D. Iowa 2000) (claims for purely economic losses are

consigned to contract law). In some jurisdictions, claims for fraud are an exception to the economic loss doctrine. Id. at 887 (listing cases). "Thus, in a number of jurisdictions, when a plaintiff's damages are proximately caused by a defendant's intentional, false representation, the plaintiff is not barred from recovering economic damages because of the economic loss doctrine." Id. (citing Fireman's Fund Ins. Co. v. SEC Donahue, Inc., 679 N.E.2d 1197, 1199 (Ill. 1997)). See also City of Richmond v. Madison Mgmt. Grp., Inc., 918 F.2d 438, 446 (4th Cir. 1990) ("[I]f, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply.")

The Missouri state courts have not addressed the application of the economic loss doctrine to fraud claims. Under this circumstance, a federal court must attempt to predict how the state's highest court would resolve the issue. Jackson v. Anchor Packing Co., 994 F.2d 1295, 1301 (8th Cir. 1993) (citing Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967)).

In a case in this district, United States Magistrate Judge Terry I. Adelman conducted an extensive review of Missouri and Eighth Circuit law on the economic loss doctrine. Self v. Equilon Enters., LLC, No. 4:00-CV-1903 TIA, 2005 WL 3763533 at *8-11 (E.D. Mo. Mar. 30, 1995). The plaintiffs in Self operated retail gas stations. They entered into agreements pursuant to which the defendant oil companies agreed to provide plaintiffs with equal

-8-

pricing for motor fuel.  Plaintiffs alleged, *inter alia*, that defendants engaged in discriminatory pricing.  Based upon his review of the economic loss doctrine, Judge Adelman determined that "the Missouri Supreme Court would resolve the legal issue by holding that, in a suit involving a commercial transaction between merchants, a fraud claim to recover economic losses must be independent of the contract or such claim would be precluded by the economic loss doctrine."  <u>Id.</u> at *11.  Applying this formulation to the claims before him, Judge Adelman determined that the economic loss doctrine barred plaintiffs' claims that defendants breached pricing terms in the parties' supply agreement and interfered with contractual relationships.  Judge Adelman reasoned that the substance of these claims was for recovery of losses that arose from the parties' contractual relationship.  <u>Id.</u>  By contrast, plaintiffs' claim that defendants fraudulently suppressed business plans harmful to plaintiffs was collateral to the parties' contract and was not barred by the economic loss doctrine.  <u>Id.</u>  <u>See also</u> <u>Adbar Co. v. PCCA Missouri, LLC</u>, No. 4:06-CV-1689JCH, 2008 WL68858 (E.D. Mo. Jan. 4, 2008) (finding claims for unfair competition and tortious interference arose from duties arising outside the parties' lease agreement and thus were not barred by the economic loss doctrine).

Turning to the present case, the Court first notes that Zoltek does not allege that Structural Polymer made material fraudulent misrepresentations in order to induce Zoltek to enter the agreement in the first place.  Rather, Zoltek alleges that, in 2006,

Structural Polymer falsely stated that it would require the maximum quantity permissible under the Supply Agreement for the years 2007 through 2010. As a requirements contract, the Supply Agreement did not establish a set quantity of carbon fiber to be delivered each year. Thus, the agreement necessarily anticipated that Structural Polymer would identify its needs for Zoltek's carbon fiber on an annual basis, subject only to a maximum based upon each prior year's quantity. The alleged misrepresentation thus regards a key provision of the Supply Agreement. Zoltek's fraud claim is not outside or collateral to the Supply Agreement and thus is barred by the economic loss doctrine.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants' Structural Polymer Group, Ltd., and Gurit (UK) Ltd. to dismiss for failure to state a claim [Doc. #10] is **granted**.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of November, 2008.